[Cite as *Garber v. Ohio Mut. Ins. Co.*, 2024-Ohio-5408.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| LARRY GARBER | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-10 |
| | : | |
| v. | : | Trial Court Case No. 23CV00363 |
| | : | |
| OHIO MUTUAL INSURANCE | : | (Civil Appeal from Common Pleas |
| COMPANY | : | Court) |
| | : | |
| Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 15, 2024

. . . . . . . . . . .

JONATHAN R. STOUDT, Attorney for Appellant

MATTHEW R. PLANEY, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Intervening Plaintiff-Appellant Shawn Neves, Executor of the Estate of

Jennifer Neves, appeals from the trial court's judgment granting summary judgment to

Defendant-Appellee Ohio Mutual Insurance Company on a declaratory judgment action filed by Plaintiff Larry Garber. Although Neves contends that Larry Garber was an "insured" under an insurance policy issued by Ohio Mutual, the trial court properly concluded, based on the policy language, that Garber was not performing "domestic duties" related to the "insured premises" or duties "as an employee of an insured, or for the benefit of the insured." Additionally, even if Larry Garber was an "insured," the policy's "incidental coverage" provision did not offer reinstatement of coverage to the motorized vehicle exclusion because the incident occurred on a public roadway, not on the "insured premises." For the reasons outlined below, the judgment of the trial court is affirmed.

## I.  Background Facts and Procedural History

{¶ 2} In November 2021, Larry Garber contacted his cousin, Phillip Garber, seeking to borrow a tractor from Phillip to use as his primary mode of transportation because his personal vehicle was inoperable. On Thanksgiving Day, Phillip loaned Larry his oldest tractor, which had wiring issues and was not equipped with red reflectors in the rear, as a temporary means of transportation. Upon loaning the tractor to Larry, Phillip stipulated that the tractor had to be returned no later than the following Tuesday because Phillip intended sell the tractor at auction the following weekend.

{¶ 3} On the evening of December 1, 2021, Larry set off to return the tractor to Phillip as requested. Up until that time, Larry had never attempted to use the lights on the tractor. While he was traveling to Phillip's residence, Larry stopped the tractor along the side of Auld Road, apparently pulling onto the gravel in the shoulder of the road after realizing that the tractor's lights were not working. Shortly thereafter, Jennifer Neves was

a front seat passenger in a van driven by Glen Sell that collided with the rear of Phillip's unlit tractor parked on the side of the road. The collision took place in front of Peter Coppess's farm at 7115 Auld Road, which was farmed by Phillip and was listed as an insured location in the subject policy. Jennifer sustained severe injuries in the collision, and both Glen and Jennifer filed suit against Larry as a result of the accident because Larry was operating the tractor.

{¶ 4} Larry did not have automobile insurance at the time of the collision. Phillip was the holder of a farm owner's policy of insurance issued by Ohio Mutual Insurance Company. Under the policy, the term "insured" was defined as:

10. Insured means:

a. you;

b. your relatives, if residents of your household;

c. any other person under the age of 21 in your care or in the care of your resident relatives;

d. persons using or caring for watercraft or animals owned by an insured and to which this policy applies (this does not include persons using or caring for watercraft or animals in the course of business or without the owner's consent);

e. *persons in the course of performing domestic duties, that relate to the insured premises*;

f. persons in the course of acting as your real estate manager for the insured premises;

g. *A person while performing duties as an employee of an insured, or for the benefit of the insured, is an insured with respect to farm implements and other vehicles covered under this policy*;

h. a partnership or joint venture named in the Declarations, and any partner or member thereof, but only with respect to its liability as such; and

i. an organization named in the Declarations, other than an individual, partnership, or joint venture, and any executive officer, director, or stockholder thereof while acting within the scope of his/her duties as such.

{¶ 5} The policy also contained the following motorized vehicle exclusion to liability coverage:

1. Exclusions That Apply to Coverage L and M – This policy does not apply to bodily injury or property damage:

. . .

g. which results from:

(1) the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading, or unloading of motorized vehicles, recreational motor vehicles, or watercraft, owned or operated by or rented or loaned to an insured;

(2) the entrustment by an insured of a motorized vehicle, recreational motor vehicle, or watercraft to any person; . . . except as provided by Incidental Coverages, Motorized Vehicles or Watercraft.

{¶ 6} However, the policy's "Incidental Coverage, Motorized Vehicles" provision

reinstated coverage for motorized vehicles if the incident occurred on "insured premises," stating:

We pay for the bodily injury or the property damage which:

(a) occurs on the insured premises and is a result of the ownership, maintenance, use, loading, or unloading of:

(1) a motorized vehicle if it is not subject to motor vehicle registration because of its type or use:

(2) a motorized vehicle which is designed only for use off public roads; or

(3) a recreational motor vehicle.

{¶ 7} The policy defined "insured premises" to include "all other premises described in the Declarations," "other land you use for farming purposes," and "all access ways adjoining the insured premises."

{¶ 8} Larry tendered the defense of the suit filed against him to Ohio Mutual under Phillip's farm owner's policy. Ohio Mutual sent Larry a denial of coverage letter, which set forth the basis for Ohio Mutual's denial of coverage. Ohio Mutual advised Larry that he did not meet the definition of an insured under the subject policy because he was (1) not a resident relative of the household of the named insureds, Phillip and his wife, Coreen Garber; and (2) at the time of the accident, he was not an employee of Phillip or Coreen and was not performing duties for the benefit of either Phillip or Coreen. Ohio Mutual further advised Larry that, even if he had qualified as an insured, there still was no coverage owed to him because, at the time of the accident, an exclusion related to the operation of motorized vehicles applied to exclude coverage. Ohio Mutual explained that

the tractor was a "motorized vehicle" subject to the coverage exclusion and that, since the accident occurred on a public road, the incidental coverage for motorized vehicles did not apply.

{¶ 9} Thereafter, Larry filed a declaratory judgment action, asking the trial court to determine whether he was entitled to defense and indemnification from Ohio Mutual under Phillip's policy. Larry contended that he was an insured under Phillip's policy because (1) he was performing domestic duties under provision 10e of the policy by returning the tractor to Phillip and (2) he was returning the tractor for the benefit of Phillip, who sought to sell the tractor at an upcoming sale, under provision 10g of the policy. Larry also contended that he was entitled to coverage under the policy's incidental coverage provision for motorized vehicles.

{¶ 10} Neves joined Larry's action as an intervening plaintiff, and both Neves and Ohio Mutual moved for summary judgment. In granting Ohio Mutual's motion for summary judgment, the trial court found that Larry was not an "insured" under the policy issued to Phillip and that Ohio Mutual was, therefore, entitled to judgment as a matter of law. The trial court reasoned that Larry's use of the tractor was for his own personal use, which had nothing do with performing domestic duties related to Phillip's home, farm, or business. The court further found that Larry was not performing duties as an employee of Phillip and was not otherwise performing duties for Phillip's benefit by simply returning the tractor, which he had borrowed for his own personal transportation use. Upon determining that Larry was not an insured, the trial court did not reach a conclusion regarding incidental coverage.

**{¶ 11}** Neves appealed.

## II.     Assignments of Error

**{¶ 12}** Neves asserts the following two assignments of error:

The trial court erred in granting the Motion for Summary Judgment filed on behalf of Defendant-Appellee Ohio Mutual Insurance Company in its Judgment Entry dated June 26, 2024.

The trial court erred in denying the Motion for Summary Judgment as to coverage filed by Intervening Plaintiff-Appellant Shawn Neves, Executor of the Estate of Jennifer Neves in its Judgment Entry dated June 26, 2024.

**{¶ 13}** "When a declaratory judgment action is resolved on summary judgment, an appellate court's review of the trial court's resolution of the legal issues is de novo." *Riverside v. State*, 2016-Ohio-2881, ¶ 21 (2d Dist.), citing *Troutman v. Estate of Troutman,* 2010-Ohio-3778, ¶ 15 (2d Dist.). "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Id.*, quoting *Brewer v. Cleveland City Schools Bd. of Edn.,* 122 Ohio App.3d 378, 383 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co., Inc.,* 64 Ohio St.2d 116 (1980). "On de novo review, the trial court's decision is not granted deference by the reviewing appellate court." *Id.*, citing *Powell v. Rion,* 2012-Ohio-2665, ¶ 6 (2d Dist.); *Jackson v. McKinney,* 2015-Ohio-1977, ¶ 11 (2d Dist.).

**{¶ 14}** "An insurance policy is a contract whose interpretation is a matter of law."

*Sharonville v. Am. Emps. Ins. Co.*, 2006-Ohio-2180, ¶ 6, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. "Contract terms are to be given their plain and ordinary meaning." *Id.*, citing *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168 (1982). Thus, the goal when interpreting an insurance policy is to determine "the intent of the parties from a reading of the policy in its entirety and to settle upon a reasonable interpretation of any disputed terms in a manner designed to give the contract its intended effect." *Laboy v. Grange Indemn. Ins. Co.*, 2015-Ohio-3308, ¶ 8, quoting *Burris v. Grange Mut. Cos.,* 46 Ohio St.3d 84, 89 (1989). If insurance contract provisions are susceptible of more than one interpretation, they "will be construed strictly against the insurer and liberally in favor of the insured." *Sharonville* at ¶ 6, quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus.

{¶ 15} The first issue in this case pertains to the meaning of "domestic duties" as stated in section 10e of the policy and duties performed "for the benefit of an insured" as stated in section 10g of the policy. Because the policy did not define either term, we must give them their plain and ordinary meaning.

{¶ 16} Neves broadly contends that Larry was an "insured" under the policy definitions at the time of the collision because the sole reason Larry was traveling on the roadway at the time of the collision was to return the borrowed tractor to Phillip in time for it to be prepared and transported for auction. Neves argues that, while "domestic duties" and duties performed "for the benefit of the insured" were not defined in the subject policy, Larry was executing domestic duties by returning the tractor to Phillip as requested and was also doing so in a manner that was a benefit to Phillip—namely that Phillip was saved

from having to retrieve the tractor himself.

{¶ 17} Ohio Mutual, on the other hand, argues that domestic duties concern activities related to the day-to-day upkeep or maintenance of the household or a private place of residence. Ohio Mutual argues that Larry's effort to return the borrowed tractor to Phillip by attempting to drive it to Phillip's house on a public road was not a domestic duty, because his activities were not concerned with the maintenance or upkeep of Phillip's household or private place of residence; it reasons that Neves's overly-broad interpretation of "domestic duties" effectively ignores the term "domestic" in the policy's definition of "insured." Ohio Mutual further argues that Larry's attempt to return the tractor did not constitute a "benefit" to Phillip, but was simply the natural conclusion of Larry's having borrowed the tractor for his own personal use. We agree.

{¶ 18} As the trial court explained, it is undisputed that Larry was never Phillip's employee and never worked for Phillip in any capacity. Larry's use of the tractor was for his personal needs (i.e., his lack of transportation) and therefore had nothing to do with performing domestic duties related to Phillip or Coreen's home, farm, or business. At no time while the tractor was in Larry's possession prior to or at the time of the accident was Larry performing "duties" for Phillip's benefit. When Larry attempted to return the borrowed tractor to Phillip, he was not using the tractor for Phillip's benefit; he was simply returning it. Under these circumstances, we cannot say that Larry's attempt to return the tractor occurred while performing domestic duties relating to Phillip's insured premises or performing duties as Phillip's employee or for the benefit of Phillip. Thus, Larry was not an "insured" as defined by the policy.

**{¶ 19}** Next, still assuming that Larry was an "insured," Neves argues that the "incidental coverage" provision in the policy applied to the collision at issue. Neves concedes that the policy contained an exclusion to coverage for motorized vehicles, like a tractor, but contends that the incidental coverage provision restored coverage. The incidental coverage provision afforded coverage for motorized vehicles when the bodily injury or property damage occurred on the insured's premises, which, according to the policy, included "all other premises described in the Declarations," "other land you use for farming purposes," and "all access ways adjoining the insured premises."

**{¶ 20}** Neves contends that the policy did not require that the occurrence leading to a bodily injury occur entirely on the insured premises and that roadways immediately adjoining the insured premises have qualified for coverage in other instances, particularly when the incident occurred in a place that was immediately adjoining or adjacent to the insured's premises. Neves argues that regardless of whether the tractor itself was wholly on the roadway adjoining Peter Coppess's farm at the time of the collision, was completely pulled off the road onto the property, or somewhere in between, the "occurrence" took place on the insured premises and, thus, the incidental coverage provision applied. We disagree.

**{¶ 21}** It is undisputed that the tractor at issue was a "motorized vehicle" as defined in the policy and was therefore subject to the motorized vehicle exclusion. It is also undisputed that the "incidental coverage" provision would apply to reinstate coverage if the underlying incident occurred on "insured premises" and that Peter Coppess's farm, in fact, was identified in the policy as an "insured premises."

{¶ 22} However, the tractor was not being used on an "insured premises" at the time of the accident. The collision between the tractor and Sells's minivan, which was the "occurrence," did not occur on the "insured premises"; it occurred on Auld Road, where the tractor was stopped either entirely or partially in the traveled portion of the roadway. Neves concedes that the collision occurred with part of the tractor in the roadway and that a public roadway like Auld Road is not part of the "insured premises." Thus, even assuming Larry was an "insured" (which he was not), the accident at issue did not occur on the "insured premises," and therefore the "incidental coverage" provision did not apply.

{¶ 23} Neves's assignments of error are overruled.

### III.    Conclusion

{¶ 24} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.